UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jorge Antonio Oyuela Tercero,<br><br>        Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center; PATRICK DIVVER, Field Office Director, San Diego Office of Detention and Removal, U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; and KRISTI NOEM, Secretary, U.S. Department of Homeland Security,<br><br>        Respondents. | Case No.: 26cv0325-GPC(JLB)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

  On January 20, 2026, Jorge Antonio Oyuela Tercero ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to be released from his unlawful detention at the Otay Mesa Detention Facility.  (Dkt. No. 1, Pet.)  Respondents filed a return on January 23, 2026.  (Dkt. No. 4.)  Petitioner filed a traverse on January

1

26, 2026. (Dkt. No. 5.) Based on the reasoning below, the Court GRANTS the petition for writ of habeas corpus and VACATES the hearing set on January 30, 2026.

## Background

Petitioner, a 44 year old Nicaraguan national and asylum seeker, entered the United States on August 10, 2022. (Dkt. No. 1, Pet. ¶¶ 1, 2, 21.) He left Nicaragua fleeing persecution on account of his social group membership of victims of crimes committed by criminal gangs on June 1, 2022 in order to seek asylum, withholding of removal, or protection under the Convention Against Torture. (*Id*. ¶ 21.)

Petitioner received a Notice of Appear on August 18, 2022 which was dated August 12, 2022, before the Eloy Immigration Court. (*Id*. ¶ 31.) On or about August 25, 2022, he was released on bond and has complied with all conditions of his bond. *(Id*. ¶¶ 21, 31.) He has had no criminal convictions and no departures since his arrival. (*Id*. ¶ 21.) On or about May 23, 2025, he filed a defensive Form I-589 Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture with the immigration court. (*Id*. ¶ 4.) Petitioner was re-detained on June 26, 2025 and Petitioner has remained in Respondents' custody. (*Id*. ¶ 21.)

## Discussion

Petitioner asserts that his detention violates the Immigration and Nationality Act ("INA"), Fourth Amendment, Fifth Amendment Due Process Clause, and the Administrative Procedures Act ("APA"). (*Id*. ¶¶ 90-125.) He requests a writ of habeas corpus ordering his release, or in the alternative, ordering Respondents to conduct a bond and custody redetermination hearing within 14 days. (Dkt. No. 1, Pet. at 27.[1])

In response to the order to show cause, Respondents acknowledge that pursuant to *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d --, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), *amended and superseded by reconsideration by*

---

[1] Page numbers are based on the CM/ECF pagination.

–F. Supp. 3d--, 2025 WL 3713987 (Dec. 18, 2025), Petitioner is detained under 8 U.S.C. § 1226(a) and is entitled to a court ordered bond hearing. (Dkt. No. 4 at 2.) In his traverse, Petitioner argues that he is entitled to release rather than a bond hearing because the immigration court already found that he was not a danger to the community and not a flight risk and released him on bond on August 25, 2022. (Dkt. No. 5 at 2-3.) Therefore, Petitioner asserts that the government's re-detention of Petitioner without any change in circumstance violates due process and exceeds statutory authority. (*Id.*)

The government concedes that Petitioner is entitled to relief in the form of a bond hearing but Petitioner seeks immediate release. The Court addresses whether Petitioner is entitled to immediate release.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a

3

determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros,* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) and *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

Here, because Petitioner was released on bond, he maintained a protected liberty interest in remaining out of custody.

The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Thus, this factor favors Petitioner. *See Pinchi*, 792 F. Supp. 3d at 1034-35; *Salcedo* 2025 WL 2637503, at *12; *Ortiz Donis*, 2025 WL 2879514, at *12.

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, petitioner has not received a pre-detention hearing, "'the risk for erroneous

deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, --F. Supp. 3d--, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner on August 25, 2022 on bond, the immigration court determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Petitioner asserts that he has no criminal history and has complied with all bond conditions. (Dkt. No. 1, Pet. ¶¶ 21. 31.) Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). On the other hand, the costs of immigration detention are staggering. *Hernandez v. Session*, 872 F.3d 976, 996 (9th Cir. 2017). In sum, the Government's interest in detaining Petitioner without a hearing is low. *See Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite the Immigration Court's prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025

WL 2637503, *12.  At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight.  *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15.  Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."  *Ortiz Donis*, 2025 WL 2879514, at *15.  Because Petitioner was not afforded a pre-deprivation bond hearing, The Court concludes that Petitioner is entitled be released under the due process clause.

## Conclusion

Accordingly, the Court GRANTS the petition for writ of habeas corpus under 28 U.S.C. § 2241 and Petitioner SHALL be released IMMEDIATELY from DHS custody under the same conditions as his previous bond conditions.

Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.

The parties must also file a joint status report to confirm that Petitioner has been released on or before **January 29, 2026.**

**IT IS SO ORDERED.**

Dated:  January 27, 2026

Hon. Gonzalo P. Curiel
United States District Judge